**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| KIMBERLY BARRY, Individually and for Others Similarly Situated | **Case No. 25-cv-1271** |
| v. | Jury Trial Demanded |
| TEXTRON AVIATION INC. | FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Kimberly Barry (Barry) brings this class and collective action to recover unpaid wages and other damages from Textron Aviation Inc. (Textron).

2. Textron employs Barry as one of its Hourly Employees (defined below).

3. Barry and the other Hourly Employees regularly work more than 40 hours a workweek.

4. Textron pays them by the hour.

5. But Textron does not pay Barry and the other Hourly Employees at least 1.5 times their regular rates of pay for hours worked over 40 in a workweek.

6. Instead, Textron pays Barry and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Textron's "bonus pay scheme").

7. Textron's bonus pay scheme violates the Fair Labor Standards Act (FLSA) and Kansas Wage Payment Act (KWPA) by failing to compensate Barry and the other Hourly Employees at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10. This Court has general personal jurisdiction over Textron because it is a Kansas corporation.

11. Venue is proper because Textron maintains its principal place of business in Wichita, Kansas, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

12. Textron has employed Barry as a sheet metal mechanic in Wichita, Kansas since approximately January 2001.

13. Throughout her employment, Textron has paid Barry in accordance with its bonus pay scheme.

14. Barry's written consent is attached as **Exhibit 1**.

15. Barry brings this class and collective action on behalf of himself, and other similarly situated Textron employees paid under its bonus pay scheme.

16. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees Textron paid under its bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

17. The putative Kansas class of similarly situated employees is defined as:

> **All hourly employees in Kansas Textron paid under its bonus pay scheme during the last three years through final resolution of this action (the "Kansas Class Members").**

18. The FLSA Collective Members and the Kansas Class Members are collectively referred to as the "Hourly Employees."

19. Textron is a Kansas corporation headquartered in Wichita, Kansas.

20. Textron may be served with process through its registered agent: **C T Corporation System, 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603**.

## FLSA Coverage

21. At all relevant times, Textron was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Textron was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Textron was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24. At all relevant times, Textron had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25. At all relevant times, Barry and the other Hourly Employees were Textron's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26. At all relevant times, Barry and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## Facts

27. Textron "is a family of businesses encompassing a diverse range of products, each with its own rich history of innovation and excellence. Our powerful brands[] include[e] Cessna,

Beechcraft, Able Aerospace Services, Aeromotion, McCauley Propellor Systems and TRU Simulation."[1]

28. To meet its business objectives, Textron employs workers such as Barry and the other Hourly Employees to manufacture aircraft.

29. For example, Textron has employed Barry as a sheet metal mechanic in its Wichita, Kansas manufacturing facility since approximately January 2001.

30. Barry's primary job duties include measuring, drilling, dimpling, trimming, and assembling sheet metal parts for aircraft.

31. Throughout her employment, Barry has regularly worked more than 40 hours a workweek.

32. Indeed, Barry typically works approximately 8 to 12 hours a day and 5 to 6 days a week "on the clock" (40 to 72 hours a workweek).

33. Likewise, the other Hourly Employees typically work approximately 40 to 72 hours a workweek.

34. Barry and the other Hourly Employees are required to report their "on the clock" hours via the timekeeping system Textron selects and controls.

35. Textron pays Barry approximately $38 an hour.

36. But Textron does not pay Barry and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

37. Instead, Textron pays Barry and the other Hourly Employees under its bonus pay scheme.

---

[1] https://media.txtav.com/about/ (last visited November 20, 2025).

38. Specifically, Textron agrees to pay and subsequently pays Barry and the other Hourly Employees non-discretionary bonuses, including lump sum bonuses, retention bonuses, and shift bonuses, based on criteria Textron determines.

39. But Textron excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes.

40. For example, Textron paid Barry a $3,000 "Dirct Lump Sm" bonus on March 7, 2025, which Textron paid based on job performance:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Dirct Lump Sm | | | 3,000.00 | 3,000.00 |
| Reg | | | | 11,259.40 |
| Ot | | | | 1,626.90 |
| Dbt | | | | 299.20 |
| Hol | | | | 2,077.60 |
| Longevty | | | | 1,000.00 |
| Ot Lookback | | | | 22.13 |
| Psl | | | | 522.10 |
| Vac | | | | 1,559.70 |
| | Gross Pay | | $3,000.00 | 21,367.03 |

41. But Textron excluded this bonus from Barry's regular rate of pay for overtime purposes during the pay period ending March 8, 2025 (as well as all other pay periods):

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Reg | 37.4000 | 36.50 | 1,365.10 | 12,624.50 |
| Ot | 56.1000 | 7.00 | 392.70 | 2,019.60 |
| Psl | 37.4000 | .50 | 18.70 | 540.80 |
| Vac | 37.4000 | 3.00 | 112.20 | 1,671.90 |
| Dbt | | | | 299.20 |
| Dirct Lump Sm | | | | 3,000.00 |
| Hol | | | | 2,077.60 |
| Longevty | | | | 1,000.00 |
| Ot Lookback | | | | 22.13 |
| | Gross Pay | | $1,888.70 | 23,255.73 |

42. Thus, under its bonus pay scheme, Textron does not pay Barry and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

43. Barry brings her claims as a class and collective action on behalf of herself and the other Hourly Employees.

44. Like Barry, the other Hourly Employees are victimized by Textron's bonus pay scheme.

45. Other Hourly Employees worked with Barry and indicated they were paid in the same or similar manner.

46. Based on her experience with Textron, Barry is aware Textron's bonus pay scheme was imposed on other Hourly Employees.

47. The Hourly Employees are similarly situated in the most relevant respects.

48. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

49. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

50. Rather, Textron's bonus pay scheme renders Barry and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 in a workweek.

51. Textron's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

52. Textron's records also show it paid Barry and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

53. The back wages owed to Barry and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

54. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Textron's records, and there is no detraction from the common nucleus of liability facts.

55. Therefore, the issue of damages does not preclude class or collective treatment.

56. Barry's experiences are typical of the experiences of the other Hourly Employees.

57. Barry has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

58. Barry has an interest in obtaining the unpaid wages owed to the Hourly Employees.

59. Barry and her counsel will fairly and adequately protect the interests of the Hourly Employees.

60. Barry retained counsel with significant experience in handling complex class and collective action litigation.

61. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Textron will reap the unjust benefits of violating the FLSA and KWPA.

62. Even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

63. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Textron.

64. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

65. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

66. Among the common questions of law and fact are:

a. Whether Textron paid the Hourly Employees non-discretionary bonuses;

b. Whether Textron failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

c. Whether Textron failed to pay the Hourly Employees earned overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

d. Whether Textron's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

e. Whether Textron's violations were willful.

67. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

68. The Hourly Employees are known to Textron, are readily identifiable, and can be located through Textron's business and personnel records.

**TEXTRON'S VIOLATIONS WERE WILLFUL**

69. Textron knew it employed Barry and the other Hourly Employees.

70. Textron knew it was subject to the FLSA's overtime provisions.

71. Textron knew it was subject to the KWPA's earned wages provisions.

72. Textron knew the FLSA required it to pay non-exempt employees, including Barry and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

73. Textron knew Barry and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Textron's timekeeping system.

74. Textron knew Barry and the other Hourly Employees were non-exempt employees entitled to overtime pay.

75. Textron knew it paid Barry and the other Hourly Employees non-discretionary bonuses.

76. Textron knew it was required to include these non-discretionary bonuses in their regular rates of pay.

77. Textron knew these non-discretionary bonuses were not included in Barry's and the other Hourly Employees' regular rates of pay for overtime purposes.

78. And Textron knew the FLSA requires it to pay Barry and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

79. And Textron knew the KWPA requires it to pay Barry and the other Hourly employees all earned wages, including overtime wages.

80. Textron's failure to pay Barry and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

81. Textron knowingly, willfully, and/or in reckless disregard of the FLSA and Kansas law carried out its unlawful bonus pay scheme that deprived Barry and the other Hourly Employees of

overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

**COUNT I**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**(FLSA COLLECTIVE)**

82. Barry brings her FLSA claims as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

83. Textron violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

84. Textron's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

85. Accordingly, Textron owes the Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

86. Because Textron knew or showed reckless disregard for whether its bonus pay scheme violated the FLSA, Textron owes the Hourly Employees these wages for at least the past 3 years.

87. Textron is also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

88. Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**
**FAILURE TO PAY EARNED WAGES UNDER THE KWPA**
**(KANSAS CLASS)**

89. Barry brings her KWPA claims on behalf of herself and the other Kansas Class Members pursuant to FED. R. CIV. P. 23.

90. Textron's conduct violates the KWPA. *See* K.S.A. §§ 44-301 *et seq.*

91. The KWPA provides employees, such as the Kansas Class Members, a private right of action to recover back wages. K.S.A. § 44-324a; *Spor v. Presta Oil Co.*, 14 Kan. App. 2d 696, 697 (1990).

92. At all relevant times, Textron was subject to the KWPA because Textron was (and is) an "employer" within the meaning of the KWPA. K.S.A. § 44-313a.

93. At all relevant times, Textron employed Barry and the other Kansas Class Members as its covered "employees" within the meaning of the KWPA. K.S.A. § 44-313b.

94. The Kansas Class Members are non-exempt employees entitled to all earned wages, including overtime wages at the required rates, under the KWPA. K.S.A. §§ 44-313, 319; K.A.R. § 49-20-1d.

95. The KWPA requires employers, like Textron, to pay non-exempt employees, such as the Kansas Class Members, earned overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. K.S.A. § 44-313, 319a; K.A.R. § 49-20-1d; *see also*, *Elkins v. Showcase, Inc.*, 237 Kan. 720, 727-729 (1985).

96. Textron violated, and is violating, the KWPA by failing to pay the Kansas Class Members earned overtime wages at rates of at least 1.5 times their true regular rates of pay for hours worked over 40 in a workweek.

97. Textron's unlawful conduct harmed Barry and the other Kansas Class Members by depriving them of the earned overtime wages they are owed.

98. Accordingly, Textron owes the Kansas Class Members the difference between the wages paid and the wages actually earned, plus interest, as provided under K.S.A. 16-201 from the date the wages were due as defined by the KWPA, as well as any other penalties provided for under Kansas law.

## JURY DEMAND

99. Barry demands a trial by jury on all Counts.

## DESIGNATION OF PLACE OF TRIAL

100. Plaintiff hereby requests the trial be held in Wichita, Kansas.

## RELIEF SOUGHT

WHEREFORE, Barry, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying this action as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Barry and her counsel to represent the interests of the Kansas Class Members;

d. An Order finding Textron liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Textron liable to the Kansas Class Members for all their earned but unpaid wages owed under the KWPA, plus interest and available penalties;

f. A Judgment against Textron awarding the Hourly Employees all their unpaid wages, liquidated damages, interest, and any other penalties available under the FLSA and/or KWPA;

g. An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

h. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: November 25, 2025

Respectfully submitted,

**BRADY & ASSOCIATES**

By: *s/ Michael F. Brady*
KSD Bar No. 18630
2118 W. 120th Street
Leawood, Kansas 66209
Phone: (913) 696-0925
brady@mbradylaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR BARRY & THE HOURLY EMPLOYEES**